# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jovianne Demas, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn according to the law, hereby state that the facts set forth in this affidavit are true and correct to the best of my knowledge, information, and belief:

## INTRODUCTION

1.  This affidavit is submitted in support of an application for an arrest warrant for the Defendant, CHRISTOPHER JOHN CEFARATT. As set forth herein, there is probable cause to believe that from a time unknown but not later than on or about September 7, 2022, through on or about October 18, 2022, in the State and District of Colorado, CEFARATT violated federal law, specifically: manufacturing and dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), transferring an unregistered machinegun in violation of 26 U.S.C. § 5861(e), knowing sale of a firearm to a prohibited person in violation of 18 U.S.C. § 922(d), knowing possession of a machine gun in violation of 18 U.S.C. § 922(o), receipt or possession of an unregistered firearm in violation of 26 U.S.C. §5861(d). As a result of the investigation described herein, on or about September 7, 2022, Federal law enforcement officers purchased one (1) Anderson Manufacturing machine gun model AM-15 multi caliber rifle bearing serial # 18298580 from CEFARATT that was determine to be a fully automatic weapon; on or about September 13, 2022, Federal law enforcement officers purchased two (2)firearms that were purported to be fully automatic: Palmetto State Armory model AKV 9mm caliber pistol bearing serial number AKV013190 and a Privately Made Firearm unknown model .223 caliber rifle from CEFARATT; on or about September 27, 2022 , Federal law enforcement officers purchased two (2) firearms: Palmetto State Armory model PA-15 multi caliber rifle bearing serial # SCD162641

and a Privately Made Firearm unknown model 9mm caliber pistol from CEFARATT, one of which was determined to be a short barrel rifle; on or about October 18, 2022, Federal law enforcement officers purchased four (4) firearms: a Smith and Wesson model MP15 9mm caliber rifle bearing serial #SN28510, a Zastava model ZPAPA 7.62 caliber pistol bearing serial #Z92-081975, a Moores Machine Company mode3l MMC M4 5.56 caliber rifle bearing serial #0306133290, and a Privately Made Firearm unknown model .223 caliber rifle from CEFARATT, three of the firearms are suspected to be short barrel rifles.

## AGENT BACKGROUND AND EXPERIENCE

2.      Your affiant is a Special Agent (SA) with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have so been employed since October 2009. I am presently assigned to the Denver Field Division. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). Prior to my employment with ATF, I was employed through the State of Texas as a Child Protective Services Investigator for approximately 18 months. I have a Bachelor of Arts degree from the University of Texas, Austin, and have completed all the required training for the ATF at the ATF National Academy located at the Federal Law Enforcement Training Center in Glynco, Georgia. Based on my training and experience, I am familiar with violations of federal criminal laws including offenses involving dealing without a license and transferring unregistered machine guns. As an ATF Special Agent, I have conducted and participated in both state and federal investigations involving the illegal sales of firearms. I have also investigated and assisted in the prosecution of criminal street gangs engaged in illegal narcotics and firearms trafficking. During these investigations, I have participated in various types of investigative techniques, including electronic surveillance; undercover agents and informants; and controlled purchases of firearms and narcotics

from suspects. I have participated in physical surveillance operations and have participated in the execution of state and federal arrest warrants and search warrants. In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record searches, pen registers and trap and trace devices, financial records, utility records, and telephone toll and subscriber records. I have interviewed numerous members and former members of gangs, as well as conferred with other law enforcement officers about: the slang, codes, symbols, graffiti, and dress of gang members; gang members use of telephones, e-mail, and other methods of communication to conduct their criminal activities; gang members and the use of false and fictitious identities to thwart law enforcement investigation of their activities. As a Special Agent, your affiant is authorized to carry firearms, execute warrants, make arrests for offenses against the State of Colorado and the United States of America, as well as performing other duties as authorized by Federal and State law. As a Special Agent, your affiant is familiar with federal criminal laws pertaining to firearms, explosives, and narcotics violations. I know that it is a violation of 18 U.S.C. § 922(a)(1)(A) for any person to engage in the business of manufacturing and dealing in firearms without obtaining a Federal Firearms License. I also know that it is a violation of 26 U.S.C. § 5861(e) for any person to transfer a machinegun that has not be registered in the National Firearms Registration and Transfer Record.

3. The statements contained in this affidavit are based, in part, on information provided by Special Agents and Task Force Officers of the ATF and other law enforcement officers; on conversations held with police officers; and on your affiant's background and experience as a Special Agent of the ATF. Your affiant has not included each and every fact known to your affiant concerning this investigation. Your affiant has set forth only the facts that

your affiant believes are necessary to establish the required foundation for an order authorizing the arrest of CHRISTOPHER JOHN CEFARATT.

## PROBABLE CAUSE

4.	Your affiant submits the facts set forth below establish probable cause to believe that, from a time unknown but not later than on or about September 7, 2022, through on or about October 18, 2022, in the State and District of Colorado, the Defendant, CHRISTOPHER JOHN CEFARATT, knowingly and intentionally violated federal firearms laws, specifically manufacturing and dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), transferring an unregistered machinegun in violation of 26 U.S.C. § 5861(e), knowing sale of a firearm to a prohibited person in violation of 18 U.S.C. § 922(d), knowing possession of a machine gun in violation of 18 U.S.C. § 922(o), receipt or possession of an unregistered firearm in violation of 26 U.S.C. §5861(d). Accordingly, your affiant requests the issuance of a criminal complaint and arrest warrant.

## SUMMARY OF THE INVESTIGATION

5.	The United States, including the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), is conducting a criminal investigation of CHRISTOPHER JOHN CEFARATT and both identified and unidentified co-conspirators regarding possible violations of 18 U.S.C. § 922(a)(1)(A), 18 U.S.C. § 922(o), 18 U.S.C § 922(d), and 26 U.S.C. § 5861 (d), 26 U.S.C. § 5861(e) , (hereinafter "the Subject Offenses").

6.	On September 1, 2022, utilizing an undercover Facebook page, an ATF Undercover Special Agent [hereinafter referred to as "the UC"] messaged "Chris John" (subsequently identified as CEFARATT) through Facebook messenger regarding a Facebook Marketplace post CEFARATT had posted approximately a week prior. During the recorded Facebook Messenger

conversation, the UC and CEFARATT discussed a day and time to meet for the UC to purchase merchandise that CEFARATT had for sale. The UC and CEFARATT set up a meeting for September 7, 2022. It was planned for an ATF Confidential Informant [hereinafter referred to as "the CI"] to accompany the UC. The CI has been given monetary compensation in exchange for giving law enforcement reliable information regarding criminal activities on dozens of prior occasions. He is not trying to reduce any sentence in exchange for his cooperation.

7. On September 7, 2022, the UC, acting in an undercover capacity, along with the CI, drove to CEFARATT's residence located at 925 S Krameria St, Denver, CO 80224, in the Judicial District of Colorado. Once at CEFARATT's residence, CEFARATT informed the UC and CI that all the items CEFARATT had out were for sale. While CEFARATT was discussing miscellaneous items for sale, CEFARATT said "I don't know if yall are into guns, but I got a lots and lots of guns." The UC stated that her boyfriend liked guns and the CI responded informing CEFARATT that the CI is interested in guns because the CI can't purchase them from pawn shops. CEFARATT then stated he builds a lot of "ghost guns." CEFARATT said he currently had 6 firearms for sale and the prices ranged from $700-$2900 per firearm. The CI informed CEFARATT that he/she would take one or two and CEFARATT stated they were all in separate pieces right now, but he would be able to put one together quickly. CEFARATT then told the UC and CI that CEFARATT had a firearm that is full auto for sale. The CI informed CEFARATT that he/she would purchase the full auto firearm.

8. The UC and CI followed CEFARATT to the back left corner of his garage where the UC observed 2 large black pelican cases on the ground filled with an assortment of different firearms parts. CEFARATT showed the UC and CI a built-out firearm and stated it was his own personal firearm that was not for sale. The CI asked if it was "fully," and CEFARATT informed

the CI that it was semi-automatic. CEFARATT opened the firearm and showed the UC and CI the inner workings of the firearm and again stated it was semi. The UC asked CEFARATT if he could make those, and CEFARATT responded saying "yeah you basically get a polymer 80 build, like these (CEFARATT showed the UC an empty box with Polymer 80 on it) and you just take a drill and drill the mill out," and continued to explain the process of building out a lower receiver and explained the firearm would not have a serial number on it. CEFARATT then showed the UC and CI a completed lower receiver and stated that one would be $700, and the caliber was .223/5.56.

9. CEFARATT started talking about the custom trigger for the firearm the CI wanted to purchase. CEFARATT stated the firearm had a drop in trigger. The CI asked which firearm was the fully automatic firearm, and CEFARATT responded stating any of them could be because it is just the drop in trigger that makes the firearm fully automatic. CEFARATT informed the UC and CI that the trigger was very hard to come across and for the full set up of the firearm and trigger, the total cost would be $1,800. CEFARATT stated that the trigger was currently being sold for $2,200 and very hard to find, and stated the trigger was called a Rare Breed Trigger. CEFARATT informed the UC and CI that he needed a few minutes to put it together, and he would also throw in some upgrades. The CI asked CEFARATT if he had a firearm for $700 and CEFARATT stated that he forgot he sold that one the previous night.

10. The CI and CEFARATT discussed more about firearms and CEFARATT stated he could let the CI pick out what he/she wanted. CEFARATT stated that he builds firearms all the time. CEFARATT picked up a lower receiver and explained that you just "drill them out, and then put the holes in the side, and there's no serial number, it's all legit." CEFARATT then went into discussion about the Glock kits and explained how to drill those out and stated they were easier to make. CEFARATT stated 2 weeks ago, Colorado banned the Glock builds so he purchased 10

6

builds right before the ban. CEFARATT then started he had a "badass AK pistol" that was full auto, and he was selling that for $2900. CEFARATT described the AK pistol as an AK 9, full auto that had the best of everything on it. He said the firearm small, a 9mm with 6 - 35 round magazines for it, a fold out stock, a HoloSun sight on it, 45 degree angled sights, and laser flash lights. CEFARATT stated he did not build that one but purchased it last week and that he purchased it as a regular semi-auto but when he got home, he saw the that he could click it all the way down to full auto. CEFARATT stated he went and shot it and that it shot full auto.

11. CEFARATT continued going through all his firearm parts and informed the CI and UC that if we had a Glock 19, he had a threaded barrel for that firearm, and stated you could put a silencer on the end of it. The CI asked CEFARATT if he dealt with the Glock switches, and CEFARATT stated no, he was not trying to get in trouble. CEFARATT stated if you buy one of those, the ATF will eventually come to your house. CEFARATT stated if you buy them second hand, you will be fine. CEFARATT then stated that the ATF is also tracking down and collecting the trigger he had purchased, but the only reason he still had his was because he purchased it from someone who had purchased it from somebody else. CEFARATT informed the UC and CI that they could buy silencer online as an oil filter but don't last nearly as long as a real silencer.

12. CEFARATT walked back to the area with all the firearm parts and started looking through the boxes of firearm parts. The UC and CI also walked to the back area with CEFARATT, and the UC asked CEFARATT where he bought the polymer 80 kits. CEFARATT stated he got those from OfficePlanet.com or the polymer 80 website. CEFARATT continued to pull parts and work on the firearm, then informed the UC and CI that he needed to go inside to get some parts and that he would be shutting his garage while he went inside.

13. While waiting for CEFARATT, the UC gave the CI $2,300 of pre-recorded U.S. Currency/ATF buy money to purchase all the items. The UC and CI saw CEFARATT exit his residence and return to his garage and heard hammering noises coming from inside of the closed garage. CEFARATT opened the garage door holding the completed firearm with the drum magazine inserted into it. CEFARATT also had a Glock pistol in his front right pocket that he did not have previously during the interaction.

14. CEFARATT showed the UC and CI the firearm with the drum magazine in it and had difficulty taking out the drum magazine. The CI asked for another magazine in case the drum magazine did not work, and CEFARATT stated he would have to go inside his residence to get one. CEFARATT stated that the UC and CI would want a magazine drum like the one he was giving them when purchasing a full auto firearm. CEFARATT left to go back inside the residence, then came back shortly after. CEFARATT came back in with another firearm in his hand that appeared to be spray painted white with the black metal still showing through the paint giving off the appearance of white and black camouflage. CEFARATT informed the UC and CI that firearm was a full auto SCAR AR-15 but needed a buttstock and some work. CEFARATT took the magazine from that firearm and added it into the items being purchased by the UC and CI.

15. CEFARATT and the UC went over pricing again for all items the UC and CI were purchasing, which included electronics and other items which were not firearms. The UC attempted to purchase the Glock pistol CEFARATT had in his pocket, but CEFARATT would not sell it to the UC. CEFARATT also informed the UC and CI that he was recently robbed, and he shot off a round from one of his firearms.

16. CEFARATT informed the UC and CI that the total amount of everything they were purchasing would be $2,300. The CI paid CEFARATT and CEFARATT counted the money.

CEFARATT provided the CI his telephone number as 720-392-9485 (the "Target Cell Phone"). The CI informed CEFARATT that he/she was planning on purchasing more firearms from CEFARATT because the CI was a felon and couldn't buy them from the pawn shop and CEFARATT acknowledged this statement in the affirmative and stated that CEFARATT would have more firearms for sale.

17.     Included in the items the UC and CI purchased on September 7, 2022, was an Anderson Manufacturing machine gun, model AM-15, multi caliber, bearing serial number 18298580 (*Fig. 1*) and a 100 round drum magazine (*Fig. 2*).  The Anderson Manufacturing firearm was subsequently sent to the ATF Firearms and Ammunition Technology Division, which provides expert technical support on firearms and ammunition. The Anderson Manufacturing AM-15 firearm that CEFARATT sold to the UC and CI was determined to be a machinegun as defined in 26 U.S.C. § 5845(b), as CEFARATT purported.

 

*Fig. 1*                                                                                                                                *Fig. 2*

18.     Between the dates of September 7, 2022, and September 13, 2022, the CI and CEFARATT, at cellular telephone number (720) 392-9485 (the "Target Cell Phone"), engaged in recorded cellular telephone calls and text communications. CEFARATT, using the Target Cell

9

Phone, informed the CI that CEFARATT numerous other firearms for sale, which CEFARATT purported to be fully automatic firearms like the machinegun that CEFARATT had previously sold to the CI. CEFARATT also sent the following pictures to the CI using the Target Cell Phone (Fig. *3-5*).




*Fig. 3*     *Fig. 4*



*Fig. 5*

19.     On September 13, 2022, the UC, acting in an undercover capacity, along with the CI, drove to CEFARATT's residence located at 925 S Krameria St, Denver, CO 80224. While at CEFARATT's residence, the UC and the CI engaged in similar conversations as during the previous controlled purchase from CEFARATT.

20.     During the controlled purchase on September 13, 2022, CEFARATT asked the UC and CI if they smoked marijuana, and the UC and CI stated no.  CEFARATT stated he did not either, but he wanted to know if the CI or UC had any interested buyers and stated it is good medical marijuana.  CEFARATT informed the CI that he sold marijuana by the pound for $300-$400.

21.     The CI informed CEFARATT that the CI and UC wanted to purchase all 3 firearms they had previously discussed. The CI informed CEFARATT that he did not want to be driving around with firearms in his/her vehicle because the CI was a felon.  While the UC, CI, and CEFARATT discussed prices, CEFARATT was working on putting together one of the firearms. CEFARATT continued to mess with items on the floor of his garage, and then picked up another firearm that he stated had several parts from his personal firearm on it.  This firearm was black in color with a tripod attached to the front of the firearm.  The UC asked if the firearm was full auto and CEFARATT stated yes.  He stated that firearm was missing the magazine release spring but still functioned.  The CI asked if CEFARATT had the AK firearm, and CEFARATT stated yes. CEFARATT walked to the back left corner of his garage and the UC and CI followed him. CEFARATT picked up the AK style firearm, unfolded the stock, and informed the UC and CI about the upgraded items the firearm had on it.  Then CEFARATT showed the UC and CI all the different positions of the selector switch.  The UC asked what the F stood for on the gun and

CEFARATT stated fire, and the A was for auto. CEFARATT also pulled out 3 magazines that he stated were fully loaded with ammunition; two of the magazines were 35-round magazines and the other was a 30-round magazine. The UC asked CEFARATT if he had shot that firearm before, and he stated yes. He stated he went to Shoot Indoors but did not shoot fully auto there because shooting full auto wasted a lot of bullets.

22. The UC asked CEFARATT if he made the AK style firearm and CEFARATT stated he did not, that he purchased the firearm. The UC asked CEFARATT if he had built any pistols lately and he stated no, but he had a friend coming back from Mexico that would be going to his house later, and he had a few builds that they would be putting together. CEFARATT stated he would have a Glock and a few more ARs built up soon. CEFARATT informed the UC and CI he wanted to get another rare breed trigger, but they were very hard to find. CEFARATT stated there was a different brand of trigger like the rare breed trigger in Scottsdale, AZ that he was going to have his dad check out for him. The CI and UC gave CEFARATT a total of $5,000 of pre-recorded U.S. Currency/ATF buy money to purchase all the items. CEFARATT stated he should have more firearms to sell in a week or two and would be willing to bring them to the warehouse.

23. Included in the items the UC and CI purchased on September 13, 2022, was the following items:

    a. Palmetto State Armory, Model AKV, 9mm caliber pistol, bearing serial number AKV013190 (*Fig. 6*)

    b. A black in color AR style firearm, 5.56 caliber pistol, bearing no identifiable markings or serial number (*Fig. 7*)

    c. An airsoft rifle painted in black/white camouflage, bearing no serial number which CEFARATT purported to be a machinegun (*Fig. 8*)

 

*Fig. 6*               *Fig. 7*



*Fig. 8*

24.     Between the dates of September 13, 2022, and September 27, 2022, the CI and CEFARATT, utilizing the Target Cell Phone, engaged in recorded cellular telephone calls and text communications. CEFARATT, using the Target Cell Phone, informed the CI that CEFARATT additional firearms for sale, which CEFARATT purported to be a Glock model 17 pistol, a .556 caliber AR style firearm, and a .223 caliber AR style pistol.

13

25. On September 27, 2022, the UC, acting in an undercover capacity, along with the CI, drove to CEFARATT's residence located at 925 S Krameria St, Denver, CO 80224. While at CEFARATT's residence, the UC and the CI engaged in similar conversations as during the two previous controlled purchase from CEFARATT. The CI informed CEFARATT that the CI liked the small firearms like the Glock style pistols. The CI told CEFARATT that the CI attempted to purchase a small pistol at a pawn shop but was not able to pass the background check and could not purchase a firearm. The CI informed CEFARATT that the two firearms were for the CI. While present with the UC, the CI gave CEFARATT $2,100 of pre-recorded U.S. Currency/ATF buy money to purchase two firearms. Prior to leaving the residence, CEFARATT informed the CI and UC that CEFARATT would have a large quantity of firearms being delivered to him on October 15, 2022.

26. The firearms the CI purchased on September 27, 2022, are described as:

   a. Palmetto State Armory, Model PA-15, multi caliber rifle, bearing serial number SCD162641 (*Fig. 9*)

   b. A black in color Glock style firearm, 9mm caliber pistol, bearing no identifiable markings or serial number (*Fig. 10*)



*Fig. 9*                                                                                     *Fig. 10*

27. The Palmetto State Armory Model PA-15 firearm was subsequently sent to the FATD, Firearms and Ammunition Technology Division, which provides expert technical support on firearms and ammunition. The Palmetto State Armory Model PA15 firearm was determined to be a short barrel rifle, a rifle having a barrel of less than 16 inches in length, which is a "short-barreled rifle" as defined in 18 U.S.C. § 921(a)(8).

28. On October 18, 2022, another UC, acting in an undercover capacity, drove to CEFARATT's residence located at 925 S Krameria St, Denver, CO 80224. The UC engaged in similar conversation as during the three previous controlled purchased from CEFARATT. While at CEFARATT's residence, CEFARATT informed the UC he had several firearms for sale. When the UC and CEFARATT were discussing the prices of a firearm located inside of a backpack, CEFARATT informed the UC that it was his "friends" firearm that she wanted to get rid of. The UC stated he could pay $1500.00 for that firearm, and CEFARATT responded that he believed "she" would take that price for the gun. The UC informed CEFARATT he would take all four (4) firearms CEFARATT had for sale. The UC informed CEFARATT that he would have his "girl" come and pick up the firearms because the UC did not want to ride with

the firearms on his motorcycle. The UC and CEFARATT discussed firearms and the firearms prices and decide on $5600.00 for all 4 firearms.  UC# 2 arrived at CEFARATT's residence and transported all 4 firearms to the trunk of her vehicle.  UC#2 then departed the location. CEFARATT informed the UC that he got rare breed triggers from Arizona, and the UC informed CEFARATT he would turn around and send the firearms he purchased to New Mexico. CEFARATT and the UC discussed pistols and CEFARATT informed the UC about pistols he possessed.

29. The firearms the UC purchased on October 18, 2022, are described as:

　　a.　Smith & Wesson, model MP15, 9mm caliber rifle, serial #SN28510 (*Fig. 11*)

　　b.　Moore's Machine Company, model MMC M4, 5.56 caliber rifle, serial #0306133290(*Fig 12*)

　　c.　Personal Made Firearm (PMF), .223 caliber rifle , no other markings(*Fig. 14*)

　　d.　Zastava, model ZPAPA, 7.62 caliber pistol, serial #Z92-081975(*Fig. 14*)



(*Fig. 11*)


(*Fig. 12*)


(*Fig. 13*)



(*Fig. 14*)

30. The Smith and Wesson model MP15 9mm caliber rifle, the Moores Machine Company model MMC M4 5.56 caliber rifle, and the Privately Made Firearm .223 caliber rifle were subsequently measured and suspected of being a rifle having a less than 16 inches in length, which is a short barreled rifle as defined in 18 U.S.C § 921(a)(8). The firearms were subsequently sent for an official determination to the ATF Firearms and Ammunition Technology Division.

31. Based on the foregoing, your affiant submits that there is probable cause to believe that from a time unknown but not later than on or about September 7, 2022, through on or about October 18, 2022, in the State and District of Colorado, CHRISTOPHER JOHN CEFARATT, violated federal law, specifically: manufacturing and dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), transferring an unregistered machinegun in violation of 26 U.S.C. § 5861(e), knowing sale of a firearm to a prohibited person in violation of 18 U.S.C. § 922(d), knowing possession of a machine gun in violation of 18 U.S.C. § 922(o), receipt or possession of an unregistered firearm in violation of 26 U.S.C. §5861(d).

18

I, Jovianne Demas, an ATF Special Agent, being duly sworn according to law, hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

> *s/Jovianne Demas*
> Jovianne Demas
> Special Agent ATF

Submitted, attested to, and acknowledged by reliable electronic means before me on this 7th day of November, 2022.

> BY THE COURT:
>
> *James P. O'Hara*
> _____
> HON. JAMES P. O'HARA
> UNITED STATES MAGISTRATE JUDGE
> DISTRICT OF COLORADO

Affidavit reviewed and submitted by Assistant United States Attorney Conor Flanigan.